# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| **GERALD PAULK, et al.,**<br>  Plaintiffs, | |
| **v.** | **Case No. 5:22-cv-15-CLM** |
| **TENNESSEE VALLEY AUTH.,**<br>  Defendant. | |
| **JOSEPH MILES,**<br>  Plaintiff, | |
| **v.** | **Case No. 5:22-cv-105-CLM** |
| **TENNESSEE VALLEY AUTH.,**<br>  Defendant. | |
| **TOMMY JONES, et al.,**<br>  Plaintiffs, | |
| **v.** | **Case No. 5:22-cv-114-CLM** |
| **TENNESSEE VALLEY AUTH.,**<br>  Defendant. | |

## MEMORANDUM OPINION

Defendant Tennessee Valley Authority ("TVA") asks the court to dismiss Plaintiffs' two state-law counts and dismiss or strike Plaintiffs' prayer for punitive damages. (Doc. 194). As explained within, the court rules:

1. Plaintiffs pleaded facts that invoke the court's admiralty jurisdiction and the special rules for general maritime claims;

2. Plaintiffs can invoke the TVA Act's 'sue-or-be-sued' clause for waiver of TVA's sovereign immunity if TVA's alleged wrongful acts are commercial in nature; and,

3. Eleventh Circuit precedent allows wrongful death plaintiffs to seek punitive damages by using Alabama law to supplement

1

> the remedies provided by general maritime law. But to be entitled to punitive damages, wrongful death plaintiffs must prove "intentional or wanton and reckless conduct on the part of [TVA] amounting to a conscious disregard of the rights of others," not just simple negligence.

*In re Amtrak "Sunset Limited" Train Crash in Bayou Canot, Alabama, on September 22, 1993*, 121 F.3d 1421, 1427-28 (11th Cir. 1997).

The court thus **GRANTS** TVA's Motion to Dismiss Counts 1 and 2 for the surviving plaintiffs, **GRANTS** TVA's Motion to Dismiss Count 1 for the wrongful death plaintiffs, **DENIES** TVA's Motion to Dismiss Count 2 for the wrongful death plaintiffs, and **DENIES** TVA's Motion to Dismiss or Strike the wrongful death plaintiffs' prayer for punitive damages.

## I.

## BACKGROUND

### A.  *Thacker* **and Congress' waiver of TVA's sovereign immunity**

This is an admiralty case that involves the death and injury of more than 20 people. As mentioned in the introduction, Eleventh Circuit precedent says that the representatives of those who died may use Alabama law to seek punitive damages on top of the remedies provided by general maritime law if they can prove that the defendant acted either intentionally or recklessly and wantonly when the defendant caused the victim's death. *In re Amtrak, supra.*

But TVA is different than most defendants; it is a federally-owned corporation entitled to sovereign immunity from *all* money awards unless Congress waives the immunity. The parties point to two Congressional Acts for the waivers that could apply here: the Suits in Admiralty Act of 1920 ("SAA") and the TVA Act of 1933. ("TVA Act"). The parties say the choice matters because the TVA Act treats TVA like a private corporation that is subject to punitive damages under *In re Amtrak*, while the SAA treats TVA like the federal government and provides covered entities with immunity from punitive damages. *See Kasprik v. United States*, 87 F.3d 462 (11th Cir. 1996).

1. <u>SAA</u>: Assume that a Government agent or property causes injury on navigable waters, thus invoking the court's admiralty jurisdiction. The SAA waives sovereign immunity for the United States and all federally-owned corporations if the same acts by a private individual or property would invoke the court's admiralty jurisdiction. 46 U.S.C. § 30903. The SAA allows the Plaintiff to file "a civil action in admiralty in personam" against the United States or a federally-owned corporation. *Id.* TVA argues that this is the ***only*** action available to Plaintiffs in admiralty cases against TVA.

2. <u>TVA Act</u>: When Congress created the TVA, it said that "the Corporation . . . [m]ay sue and be sued in its corporate name." 16 U.S.C. § 831c(b). Plaintiffs argue that this broad 'sue-and-be-sued' clause allows them to sue TVA like a private corporation, rather than a government entity.

3. *<u>Thacker</u>*: As stated, the court agrees with Plaintiffs that the broad 'sue-and-be-sued' clause controls. Much of the court's reasoning stems from the Supreme Court's decision in *Thacker v. TVA*, 587 U.S. 218 (2019). Gary Thacker was driving his boat on the Tennessee River when he struck a power line that TVA workers were raising from the river. Thacker was injured, and he cited the TVA Act's sue-and-be-sued clause to invoke this federal court's jurisdiction to hear his state-law claims, free from sovereign immunity. *See Thacker v. TVA*, Case No. 5:15-cv-1232 (ALND July 23, 2015) (doc. 1) (complaint). But this court and the Eleventh Circuit still held that TVA was immune from Thacker's suit by grafting a "discretionary function" exception like the one found in the Federal Tort Claims Act ("FTCA") onto the TVA Act's waiver of sovereign immunity, then finding that the workers' challenged actions were "a matter of choice." *Thacker*, 587 U.S. at 222-23.

The Supreme Court unanimously reversed. The Court noted that the TVA's sue-and-be-sued clause "serves to waive sovereign immunity otherwise belonging to an agency of the Federal Government," unless there is an exception "'specifically provided in the statute itself." 587 U.S. at 223 (quoting 16 U.S.C. § 831c). Congress did not include the "discretionary function" exception in the TVA Act, so courts could not graft it on. *Id*.

Sounds easy. "But that is not quite the end of the story because in *Federal Housing Administration v. Burr*, 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed.

724 (1940), the Court recognized that a sue-and-be-sued clause might contain 'implied exceptions.'" *Thacker,* 531 U.S. at 224. The Court then laid out the two *Burr* exceptions:

> The Court in that case permitted a suit to proceed against a government entity (providing mortgage insurance) whose organic statute had a sue-and-be-sued clause much like the TVA Act's. And the Court made clear that in green-lighting the suit, it was doing what courts normally should. Sue-and-be-sued clauses, the Court explained, 'should be liberally construed.' Those words 'in their usual and ordinary sense,' the Court noted, 'embrace all civil process incident to the commencement or continuance of legal proceedings.' *Burr*, 309 U.S., at 245–246. And Congress generally 'intend[s] the full consequences of what it sa[ys]'—even if 'inconvenient, costly, and inefficient.' *Id.*, at 249. But not quite always, the Court continued. And when not—when Congress meant to use the words 'sue and be sued' in a more 'narrow sense'—a court should recognize 'an implied restriction.' *Id.*, at 245. In particular, *Burr* stated, ==a court should take that route if one of the following circumstances is 'clearly shown': either the 'type[ ] of suit [at issue is] not consistent with the statutory or constitutional scheme' or the restriction is 'necessary to avoid grave interference with the performance of a governmental function.'==

*Id.* (cleaned up and highlight added). The Supreme Court remanded the case for this court to determine whether TVA's negligent conduct (*i.e.,* raising the power line) was "governmental or commercial in nature." *Id.* at 229. If this court deemed the conduct "commercial—the kind of thing any power company might do—the TVA [could not] invoke sovereign immunity. In that event, the TVA's sue-and-be-sued clause renders it liable to the same extent as a private party." *Id.* If this court instead found that TVA was acting in a "governmental" capacity, this court would *still* have to find that Congress waived TVA's immunity unless the court also found that protecting TVA from Thacker's lawsuit was "necessary to avoid grave interference" with TVA's performance of that governmental function. *Id.*

4

While *Thacker* is not binding because Gary Thacker did not invoke Rule 9(h), its rationale drives the court's opinion. The TVA Act does not contain a sovereign immunity exception for admiralty cases or punitive damages. So this court must find that Congress waived TVA's immunity from the supplemental state law punitive damages allowed by Eleventh Circuit precedent, *see In re Amtrak, supra*, unless one of the *Burr* exceptions applies:

> (1) TVA was acting in its governmental capacity, and subjecting it to state law punitive damages would gravely interfere with TVA's performance of that governmental function, or
>
> (2) Subjecting TVA to state law punitive damages is inconsistent with a statutory or constitutional scheme.

*Thacker*, 587 U.S. at 224-28. The court thus frames its recitation of the facts, then its legal discussion, around these issues. Because TVA filed its motion under Rule 12, the court recites the facts as Plaintiffs pleaded them and views those facts in a light most favorable to Plaintiffs.

## B. The TVA

Congress created the TVA in 1933, giving it "much of the essential freedom and elasticity of a private business corporation."[1] 6AC, ¶ 11 (quoting Pub. L. No. 73-17, 48 Stat. 58 (1933). Over the next 90 years, TVA used its corporate freedom to become the largest public power company in the United States, supplying electricity to more than 8.6 million customers across seven states. TVA is self-sufficient, bringing in more than $7 billion annually as of 2005.

TVA also has custody and control of nearly 300,000 acres of federally owned reservoir property and 470,000 acres of inundated property. 6AC, Ex. 5 at 1. TVA manages its land under various plans and regulations "to protect the integrated operation of the TVA reservoir and power systems, to provide for appropriate public use and enjoyment of TVA public land and to provide for continuing economic growth in the Valley." *Id.* at 2.

---

[1] There are three groups of Plaintiffs: Paulk, Miles, and Jones. All three have filed virtually identical amended complaints. *See* Doc. 186 (Miles), 187 (Paulk), 190 (Jones). Following the parties' lead, the court directs all cites and quotes to the Paulk Plaintiffs' Sixth Amended Complaint (doc. 187)("6AC").

## C. The 1963 Indenture

TVA owns much of the land around the Tennessee River near Guntersville Reservoir. As explained more thoroughly in a previous opinion (doc. 53), TVA deeded some of its property to Jackson County, Alabama in 1963 (6AC, Ex. 1), about 18 acres of which was designated for developed recreation (6AC, Ex. 2). The County built the Jackson County Park and Marina on the deeded property, although part of the Marina is located on property that TVA still owns.

TVA retained certain responsibilities related to the property. Relevant here, Section 26a of the TVA Act requires TVA to approve construction or other work along the Tennessee River that might affect river navigation or flood control. *See* 16 U.S.C. § 831y-1. So in the 1963 deed, TVA required the County to obtain TVA's approval of any structures or improvements on the deeded property. TVA reserved the right to enter the property to perform inspections of any structures. TVA also specified that it would be liable for personal injuries, property damage, or loss of life or property caused by TVA's sole negligence.

## D. Building and Maintaining Dock B

Jackson County built Dock B (a fixed and covered dock) at the Marina in 1999. Plaintiffs allege that TVA has owned, managed, or controlled Dock B ever since. 6AC, ¶ 36.

When the County built Dock B, it had to get TVA's approval under TVA's implementing regulations, which apply to boat docks (among other things). 18 C.F.R. § 1304.301(a). The TVA regulations require that all electrical panels and wiring comply with all relevant codes and statutes and be maintained to prevent public hazards. 18 C.F.R. § 1304.301. The regulations also allow TVA to determine whether the County was properly maintaining the dock and its electrical system and cancel the County's permit if TVA determined it was not. 18 C.F.R. § 1304.406.

TVA permitted Dock B upon its construction in 1999. A tornado hit the Marina in April 2009, requiring the County to rebuild Dock B. Later that month, because of electrical problems at other locations, TVA told the County

that it had to have a certified electrician inspect the electrical systems located on TVA property and certify that the systems meet the National Electric Code. 6AC, Ex. 7. TVA reminded the County of this obligation in August 2009. 6AC, Ex.8.

Plaintiffs allege that in the years that followed, TVA knew that the Marina docks "continued to be dangerous." 6AC, ¶ 56. TVA knew, for example, that an engineer determined that Dock A's electrical system did not meet the NEC code and that the County had twice rejected bids to fix it. TVA knew these things, in part, because TVA reviewed the bids. 6AC, Ex. 12. TVA also knew that boat owners were complaining about the Dock's electrical system.

Plaintiffs allege that TVA also inspected the docks during these years. Based on these inspections, TVA knew about several issues that could result in a lethal fire on Dock B, including:

- Dock B's electrical system created a fire hazard;
- Dock B housed non-operational boats and grills with propane tanks;
- The Marina did not have an emergency safety plan in case of fire;
- Dock B lacked smoke or fire detectors;
- Dock B's roof lacked fire and smoke vents and burn-out panels;
- Dock B lacked a sprinkler system;
- Dock B did not have an escape boat, safety skiff, or floatation device;
- Dock B did not have a system to alert emergency personnel; and,
- The shore power box was locked, so residents could not shut off the electricity in case of emergency.

In short, Plaintiffs allege that TVA knew that conditions were ripe for an electrical fire that neither boat residents nor County officials were prepared to respond to—making any such fire potentially deadly.

## E. The Dock B fire

Just after midnight on January 27, 2020, the *Dixie Delight* houseboat caught fire. The *Dixie Delight* was berthed in Dock B, slip 36—the closest slip to shore. The fire engulfed the *Dixie Delight*, then spread to the dock and neighboring vessels. Because the fire started in the closest slip to the shore,

7

the fire blocked residents of all other Dock B boats from reaching the shore. Several died, either by fire or drowning. Many others were injured. More than 30 boats burned and sank.

## F. Plaintiffs' claims

Plaintiffs plead five claims against TVA, two under state law (Counts 1-2) and three under general maritime law (Counts 3-5). In all three maritime claims, Plaintiffs state that "this cause of action is brought pursuant to General Maritime Law" and "this count pleads an admiralty or maritime claim under Rule 9(h) of the Federal Rules of Civil Procedure." 6AC, ¶¶ 94-95 (Count 3), 103-04 (Count 4), 114-15 (Count 5).

As for jurisdiction, Plaintiffs plead that the court has subject matter jurisdiction under 28 U.S.C. § 1333(1) because this is "a civil case of admiralty or maritime jurisdiction." 6AC, ¶ 12. Should the court find admiralty jurisdiction lacking, Plaintiffs alternatively plead jurisdiction under 28 U.S.C. §§ 1331 and 1337(a), claiming that the court has original jurisdiction over their state-law claims because TVA is a federally-owned corporation and thus their claims arise under a law of the United States.

Plaintiffs mention punitive damages only once, in their prayer for relief "[o]n behalf of the wrongful death beneficiaries." 6AC, ¶ 128. Specifically, Plaintiffs ask the court to award: "Pecuniary damages under General Maritime Law in amounts to be determined at trial, including . . . Alabama state law wrongful death supplemental remedies under Ala. Code § 6-5-410 and/or Ala. Code § 6-5-390 for punitive damages allowed under *Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199 (1996)." *Id.*

## G. TVA's motion

As mentioned, shortly after the Supreme Court decided *Yamaha Motor Corp.*, the Eleventh Circuit held that the representative of a deceased victim may seek punitive damages under Ala. Code § 6-5-410, as a supplement to the pecuniary award offered by the general maritime law to the personal representatives of non-seafarers. *In re Amtrak*, 121 F.3d at 1427-28; *see also Norfolk Shipbuilding & Drydock Corp. v. Garris*, 532 U.S. 811 (2001) (clarifying that the remedies available in wrongful death cases are available

8

in negligence-based wrongful death cases, as well as unseaworthiness cases).
TVA does not challenge *In re Amtrak* in its motion, meaning that TVA
accepts that private corporations that act wantonly can be sued for punitive
damages in a wrongful death admiralty case. Rather, TVA asks the court to
make three rulings that would require the court to treat TVA differently than
private corporations—even if TVA were acting like a private corporation:

1. The court is exercising its admiralty jurisdiction;
2. The SAA provides the exclusive waiver of sovereign immunity
   in admiralty cases; and thus,
3. The court must dismiss Plaintiffs' claim for supplemental
   state-law punitive damages because the SAA does not waive
   sovereign immunity from punitive damages.

(Doc. 194). The court starts, as it must, with jurisdiction.

## II.

## JURISDICTION

The court sits in admiralty under 28 U.S.C § 1333(1) because Plaintiffs
(a) pleaded facts that meet both elements of the *Grubart* test and (b)
expressly designated three counts as pleading general maritime claims.

1. *Grubart test*: Plaintiffs must satisfy two elements to invoke the
court's admiralty jurisdiction: locality and connection to maritime activity.
*See Grubart v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995). In
*Sisson v. Ruby*, 497 U.S. 358 (1990), the Supreme Court held that both
elements were met when a non-commercial boat caught fire while docked at a
marina, damaging the marina and other nearby vessels.

The same is true here. Plaintiffs meet the locality element because they
allege the fire started on a vessel that was in navigable waters, docked at a
marina. Plaintiffs show a connection to maritime activity because, as the
Supreme Court put it:

the storage and maintenance of a vessel at a marina on navigable
waters is substantially related to 'traditional maritime activity'
given the broad perspective demanded by the second aspect of the

> test. Docking a vessel at a marina on a navigable waterway is a common, if not indispensable, maritime activity. At such a marina, vessels are stored for an extended period, docked to obtain fuel or supplies, and moved into and out of navigation. Indeed, most maritime voyages begin and end with the docking of the craft at a marina.

*Sisson*, 497 U.S. at 367.

2. *Rule 9(h) election*: Rule of Civil Procedure 9(h) says that if admiralty is the *only* basis for federal jurisdiction, then Plaintiffs' claims are necessarily general maritime claims. The same rule says that if a claim could fall within the court's admiralty jurisdiction and another source of subject matter jurisdiction (*e.g.*, diversity or federal question), then Plaintiffs can choose whether to designate their claims as maritime claims.

Plaintiffs say they had a choice between admiralty and federal question jurisdiction; TVA says the SAA required Plaintiffs to invoke admiralty jurisdiction. The court needn't decide who is right because Plaintiffs expressly designated Counts 3-5 as general maritime claims under Rule 9(h) and pleaded 28 U.S.C. § 1333(1) as the main basis of this court's subject matter jurisdiction. So the court is sitting in admiralty because of Counts 3-5, and the court has supplemental jurisdiction over Plaintiffs' state-law claims (Counts 1-2) thanks to 28 U.S.C. § 1367(a). The question now is whether TVA has sovereign immunity against supplemental state law remedies.

## III.

## WAIVER OF SOVEREIGN IMMUNITY

The Constitution does not expressly grant the federal government with immunity from suits. Rather, the federal government's immunity stems from the common law, *see United States v. Clark*, 33 U.S. (8 Pet.) 436, 444 (1834). which extends sovereign immunity to corporations owned by the federal government. *See Fed. Land Bank v. Priddy*, 295 U.S. 229, 231 (1935).

As arbiter of the common law, the Supreme Court has held that Congress (acting as the sovereign) can waive federal sovereign immunity "to whatever extent it wishes," *Thacker*, 587 U.S. at 226, even if the result is

"inconvenient, costly, and inefficient." *Id.* at 224. As explained below, the court finds that, in the TVA Act, Congress waived TVA's immunity from the legal remedies that private businesses face if Plaintiffs can prove that TVA was acting like a commercial business. Because Plaintiffs allege facts that would show that TVA was acting like a commercial business, Plaintiffs can seek the same supplemental state law remedies the Eleventh Circuit permits against private businesses. *See In re Amtrak, supra.*

The court starts by explaining why Plaintiffs could properly claim the waiver Congress provided in the TVA Act's 'sue-and-be-sued' clause over the waiver Congress provided in the SAA for admiralty claims against the United States and federally-owned corporations.

## A.    The TVA Act's 'sue-and-be-sued' clause controls any conflict.

Congress is aware that the SAA and TVA Act provide distinct waivers of sovereign immunity, as Congress excepted claims arising from both acts from the FTCA's waiver of sovereign immunity for tort damages caused by federal employees:

> The provisions of this chapter and section 1346(b) of this title shall not apply to . . .
>
> (d) Any claim for which a remedy is provided by chapter 309 of 311 of title 46 relating to claims or suits in admiralty against the United States; [and,]
>
> (l) Any claim arising from the activities of the Tennessee Valley Authority.

28 U.S.C. § 2680. If possible, the court must read these waiver statutes in harmony, assuming that Congress knew about existing waivers each time it passed a new one. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 39, p. 252 ("laws dealing with the same subject—being *in para materia* (translated as "in a like manner")—should if possible be interpreted harmoniously").

But sometimes conflicts arise. And if the conflict cannot be reconciled, the "more recent or specific statutes should prevail over older or more general ones." *Savage Serv. Corp. v. United States*, 25 F.4th 925, 933 (11th Cir. 2022);

*see also* Scalia & Garner, *Reading Law* § 28, p. 183 ("If there is a conflict between a general provision and a specific provision, the specific provision prevails."). This canon applies to the SAA. For example, the Eleventh Circuit applied the 'general/specific' canon to find that Plaintiffs cannot invoke the SAA to file an otherwise viable admiralty claim against the United States for oil removal damages because the Oil Pollution Act of 1990 ("OPA") sets forth a more comprehensive, on-point remedial scheme for spill-related damages. *See Savage Serv. Corp.*, 25 F.4th at 938-43.

The same canon dictates that the TVA-specific 'sue-and-be-sued' clause controls if it conflicts with the SAA's general waiver for all federally-owned corporations. Three factors bolster application of the canon here. First, the latter-enacted TVA Act contains a repeal clause: "[a]ll acts or parts of acts in conflict with this chapter are repealed, so far as they affect operations contemplated by this chapter." 16 U.S.C. § 831aa. The repeal clause shows that Congress intended the TVA-specific sue-and-be-sued waiver trump any existing statute that might shield TVA. *See Savage Serv. Corp.*, 25 F.4th at 941 (noting that OPA's "notwithstanding any other provision or rule of law" clause was evidence that Congress intended OPA "to take precedence over any preexisting or subsequently-enacted legislation on the same subject," including the SAA). Second, Congress knew how to except admiralty claims filed under the SAA from the scope of TVA's 'sue-and-be-sued' waiver—as Congress later did in the FTCA—but chose not to. Third, the Supreme Court rebuked this court the last time it grafted an immunity exception from another statute on to the TVA Act's sue-and-be-sued clause. *See Thacker, supra.*

Because the court finds that the TVA Act's sue-and-be-sued clause provides the more specific immunity waiver, the court finds that if there is an irreconcilable conflict between the scope of the immunity waivers Congress provided in the SAA and TVA Act, then the TVA Act's specific permission to sue TVA for the same remedies faced by a private business trumps the SAA's alleged preclusion of otherwise-available punitive damages claims.[2]

---

[2] The court assumes without deciding two of TVA's premises that Plaintiffs do not directly challenge: (1) TVA is a "federally-owned corporation" subject to the SAA, 46 U.S.C. § 30902, and (2) binding Eleventh Circuit precedent holds that the SAA does not waive a government entity's sovereign immunity for punitive damages. *See Kasprik v. United States*, 87 F.3d 462 (11th Cir. 1996).

**B.    If the wrongful death Plaintiffs can prove their alleged facts, then the TVA Act waives TVA's sovereign immunity from the supplemental state law punitive damages they seek.**

Having decided that the TVA Act's 'sue-and-be-sued' clause provides the relevant waiver, the court next determines whether the TVA Act allows Plaintiffs to seek supplemental state-law punitive damages by using the same two-step approach the Supreme Court used in *Thacker*: (1) does the TVA Act contain an express exception for admiralty cases or punitive damages, and if not, (2) do either of the *Burr* implied exceptions apply?

**1. The TVA Act does not expressly except admiralty cases or punitive damages from its waiver of sovereign immunity.**

The first step is straight forward. The TVA Act says that "[e]xcept as otherwise specifically provided in this chapter, the Corporation [m]ay sue and be sued in its corporate name." 16 U.S.C. § 831c(b). "The TVA Act contains no exceptions relevant to tort claims," *Thacker*, 587 U.S. at 223, or tort remedies. Nor did Congress add a provision that excepts a "claim for which a remedy is provided by chapter 309 of 311 of title 46 relating to claims or suits in admiralty against the United States," as it later did when writing the FTCA. 28 U.S.C. § 2680. So the court must assume that Congress knew about the SAA and chose not to apply it to maritime claims against TVA when TVA acts commercially and is then sued in its corporate name.

Because the TVA Act does not expressly prohibit Plaintiffs from seeking supplemental state law remedies when suing TVA in its corporate name, the court must allow their supplemental punitive damage claims to go forward unless one of the *Burr* implied exceptions applies:

> when Congress meant to use the words "sue and be sued" in a more 'narrow sense'—a court should recognize 'an implied restriction.' *Id.*, at 245, 60 S.Ct. 488. In particular, *Burr* stated, a court should take that route if one of the following circumstances is 'clearly shown': either the 'type[ ] of suit [at issue is] not consistent with the statutory or constitutional scheme' or the restriction is 'necessary to avoid grave interference with the performance of a governmental function.' *Ibid*.

13

*Thacker*, 587 U.S. at 224. The court takes them in reverse order.

### 2. TVA has not clearly shown that the court must dismiss Plaintiffs' punitive claims to avoid a grave interference with TVA's performance of a governmental function.

TVA must "clearly show[]" that permitting Plaintiffs to seek supplemental state law remedies could impose a "grave interference with the performance of a governmental function." *Id.* In *Thacker*, the Supreme Court noted that "a suit challenging a commercial act will not 'gravely'—or indeed, at all—interfere with the 'governmental functions' *Burr* cared about protecting." *Thacker*, 587 U.S. at 227. Accepting Plaintiffs' pleaded facts as true, the court finds that Plaintiffs' lawsuit challenges a commercial act, so *Burr's* second implied exception cannot apply. *Id.*

When the Supreme Court remanded *Thacker*, it told this court to determine whether TVA's "conduct [was] commercial—the kind of thing any power company might do." *Id.* at 229. If this court found that TVA "act[ed] like any other company producing and supplying electric power" then "the TVA's sue-and-be-sued clause renders it liable to the same extent as a private party." *Id.* at 228-29.

Plaintiffs allege that TVA's wanton conduct stems from TVA's management of a dock on the Tennessee River shoreline. TVA does not challenge that managing a dock is commercial behavior. Rather, TVA accepts that Plaintiffs' alleged facts suggest TVA was performing the commercial role of a "wharfinger" (*i.e.*, one who owns or operates a wharf, dock. or pier) (doc. 195, p. 10-11), when arguing that this court has admiralty jurisdiction because the dock fire that stemmed from TVA's alleged acts "has a potentially disruptive impact on maritime commerce." *Sisson*, 497 U.S. at 362-63.

Further, TVA's management of the Tennessee River shoreline is "the kind of thing any power company might do." *Thacker*, 587 U.S. at 229. For example, Alabama Power (a subsidiary of the publicly-traded Southern Company) similarly manages shorelines along Alabama rivers, including docks and piers. *See* Alabama Power Shorelines, www.apcshorelines.com (last visited January 2, 2025). Because Plaintiffs allege facts that would show that TVA was acting like a private power company or dock owner, Plaintiffs "may

proceed as they would against a private company." *Thacker*, 587 U.S. at 227. Unless, of course, TVA can clearly show that subjecting it to supplemental state law punitive damages is "not consistent with the statutory or constitutional scheme." *Id.* at 224 (quoting *Burr*, 309 U.S. at 245).

### 3. TVA has not clearly shown that Plaintiffs' punitive claims are inconsistent with a statutory or constitutional scheme.

A. *Constitutional scheme*: In *Thacker*, the Supreme Court rejected the argument that Congress' withholding of the discretionary function exception from TVA violated separation of powers. *Thacker*, 587 U.S. at 226. TVA offers no new argument for a constitutional violation here, so the court finds that TVA has not clearly shown that applying state law to supplement Plaintiffs' general maritime remedies would violate the Constitution.

B. *Statutory scheme*: Nor does TVA argue that subjecting it to supplemental state law remedies is inconsistent with the TVA Act's statutory scheme, with good reason. As the Supreme Court explained in *Thacker*, Congress wrote the TVA Act's 'sue-and-be-sued' clause to treat TVA like a commercial business when TVA acts like a commercial business. *Thacker,* 587 U.S. at 226-27. Allowing the wrongful death Plaintiffs to proceed with a supplemental claim under Alabama's wrongful death statute tracks the TVA Act's scheme by placing TVA in the same shoes as a private business that committed the same wanton act.

TVA instead points to the SAA's statutory scheme, arguing that allowing TVA to proceed outside the SAA would conflict with Congress' intent that *all* admiralty actions against federally-owned corporations be governed by the SAA. The court rejects this argument for two reasons.

First, Congress can make exceptions. Even if Congress intended the SAA to cover all federally-owned corporations when it passed the SAA in 1920, Congress decided to treat TVA differently when it passed the TVA Act in 1933. Not only *can* Congress carve out exceptions to sweeping rules, it often does: "[t]he most common example of irreconcilable conflict—and the easiest to deal with—involves a general prohibition that is contradicted by a specific permission[.]" *See* Scalia and Garner, *Reading Law* § 28, p. 183. As the Court noted in *Thacker*, Congress is apt to expand the liability of federal

entities that Congress "launched into the commercial world" and "authorized to engage in business transactions with the public." *Thacker*, 587 U.S. at 227 (quoting *Burr*, 309 U.S. at 245). Again, that's the point of the 'sued-and-be-sued clause': federal entities that are allowed to conduct business with the public "should have the same amenability to judicial process as a private enterprise would under like circumstances." *Id.*

Second, allowing the wrongful death Plaintiffs to seek supplemental state law remedies does not frustrate the SAA's scheme. Before the SAA, if a merchant vessel was involved in an accident, it could be seized and its operator could be sued in state or federal court. *See Johnson v. U.S. Shipping Bd. Emergency Fleet Corp.*, 280 U.S. 320, 325-26 (1930) (explaining the SAA's history); *Brady v. Roosevelt*, 317 U.S. 575, 579-81 (1943) (same). These lawsuits often proceeded against the government vessel *in rem*. Congress passed the SAA to (a) protect the Government's vessels from being seized—and thus being taken out of public service—and (b) give injured parties the ability to seek maritime damages *in personam* in case there was nothing to recover *in rem*—*e.g.*, the vessel was worthless or destroyed. And the point of requiring Plaintiffs to file suit under the SAA exclusively was to ensure that the United States was subject to a uniform set of rules because "[d]irectly or indirectly, the money required to pay a judgment against any of the defendant in these cases would come out of the United States. It is the real party affected in all of these actions." *Johnson*, 280 U.S. at 326-37 (citing current 46 U.S.C. § 30913).

TVA has not clearly shown that allowing the wrongful death Plaintiffs to seek supplemental state law punitive damages is inconsistent with the SAA's scheme. Plaintiffs are proceeding in admiralty *in personam*, which is the benefit Congress gave Plaintiffs. No government property has been seized or is at risk of being forfeited, which is the benefit Congress gave the United States. And TVA—not the United States—is the "real party affected" by this case, *id.*, so the need for uniform rules when suing the Government is not present.

—

To sum up, *Thacker* teaches that "suits based on a public corporation's commercial activity may proceed as they would against a private company;

only suits challenging the entity's governmental activity may run into an implied limit on its sue-and-be-sued clause." *Thacker*, 587 U.S. at 227. If proved true, Plaintiffs' pleaded facts would show that TVA's acts were commercial in nature. *Thacker* thus requires the court to allow Plaintiffs to "proceed as they would against a private company," *id.*, because TVA has not clearly shown an express or implied exception to its 'sue-and-be-sued' clause.

### 4. Neither the SAA's plain language nor the Fifth Circuit's 1937 *Sevin* decision dictate that the SAA is exclusive, and following the SAA could cause reversible errors.

TVA argues that the SAA provides the exclusive immunity waiver in admiralty cases, so the TVA Act has no role to play. But the SAA's waiver provision is permissive (may be brought), not mandatory (shall be brought):

> In a case in which, if a vessel were privately owned or operated, or if cargo were privately owned or possessed, or if a private person or property were involved, a civil action in admiralty could be maintained, a civil action in admiralty in personam may be brought against the United States or a federally-owned corporation.

46 U.S.C. § 30903(a) (highlight added). Read plainly, Section 30903 *allows* Plaintiffs to bring a claim against covered governmental entities by waiving their immunity. But nothing in the SAA's text *requires* a Plaintiff to file suit, and nothing in the text says Plaintiffs can only file suit under the SAA if they choose to sue. The SAA's only exclusivity provision is § 30904, which prevents Plaintiffs from suing the Government entity *and* "the officer, employee, or agent whose act or omission gave rise to the claim." But TVA rightly acknowledges that § 30904 plays no part here. (Doc. 232, p.9).

To be fair, TVA doesn't rely on the SAA's text to support exclusivity. Rather, TVA argues that the Supreme Court's decisions in *Johnson* and *Brady*, plus the Fifth Circuit's decision in *Sevin v. Inland Waterways Corp.*, 88 F.2d 988 (5th Cir. 1937), require this court to hold that the SAA is exclusive any time a federally-owned corporation is sued in a case that could be filed in admiralty. But none of these cases deal with the TVA and its enabling act, so none are directly on point.

Of the three cases, only the Fifth Circuit's 1937 decision in *Sevin* deals with a sue-and-be-sued clause. In 1924, Congress created the (now-defunct) Inland Waterways Corporation ("IWC") and tasked the Secretary of War with governing and directing its operation of ships. *See* Inland Waterways Corporation Act of 1924, 43 Stat. 360, June 3, 1924 ("IWC Act"). The IWC Act included the same waiver language at issue here: "The corporation [m]ay sue or be sued in its corporate name." IWC Act § 5(b).

An IWC seaman contracted tuberculosis because of poor conditions on an IWC vessel. *Sevin*, 88 F.2d at 988-89. He sued IWC under the Jones Act, which allows seamen to bring maintenance and cure claims at law, before a jury. The IWC countered that, because the United States owned 100% of its capital stock, the SAA trumped the Jones Act, meaning that the seaman could not seek a remedy at law before a jury. The Fifth Circuit sided with the IWC, finding that the SAA was an exception to the Jones Act's general rule— *i.e.*, seamen can generally bring maintenance and cure claims at law, except against the United States and federally-owned corporations. *Id.* at 989.

The Fifth Circuit then decided that the IWC's sue-and-be-sued clause changed nothing:

> By section 5(b), 49 U.S.C.A. § 155(b), the corporation may sue and be sued in its corporate name. The act does not say how it may be sued. It would be suable as other corporations are sued, notwithstanding its public ownership, if there were no law to the contrary. But there was in force, and still is, the Suits in Admiralty Act of March 9, 1920, which deals with vessels 'owned by the United States or by any corporation in which the United States or its representatives shall own the entire outstanding capital stock or in the possession of the United States or of such corporation or operated by or for the United States or such corporation,' and with the method of suits arising thereabout. The act does not confine itself to vessels of corporations in which the United States then owned the entire stock, but uses the future tense 'shall own,' and the Inland Waterways Corporation falls clearly within the words. The act controls such suits against this corporation as are within its terms.

18

*Id.* (citations omitted). The Circuit's reasoning supports TVA's argument that the SAA applies here despite TVA's 'sue-and-be-sued' clause.

But *Sevin's* laconic treatment of the IWC's sue-and-be-sued clause in 1937 predates the Supreme Court's reading of sue-and-be-sued clauses in *Burr* (1940) and its progeny, each of which requires that Congress' use of sue-and-be-sued waivers be "liberally construed," despite the general rule that courts construe sovereign immunity waivers narrowly in favor of the sovereign. *See Thacker,* 587 U.S. at 224; *FDIC v. Meyer*, 510 U.S. 471, 480 (1994); *Loeffler v. Frank*, 486 U.S. 549, 544 (1988); *Franchise Tax Bd. of California v. USPS*, 467 U.S. 512, 517-18 (1984); *Reconstruction Finance Corp. v. J.G. Menihan Corp.*, 312 U.S. 81, 84 (1941). Because the Fifth Circuit did not have the benefit of *Burr* and its progeny, it did not conduct the *Burr* analysis that led the Supreme Court to unanimously reverse the lower courts in *Thacker*. Similarly, because *Burr* had not been released, the Fifth Circuit did not recognize that by "including a sue-and-be-sued clause in its charter, Congress has cast off the [corporation's] cloak of sovereignty and given it the status of a private commercial enterprise." *Loeffler*, 486 U.S. at 556.

To the point: the Supreme Court's decisions in *Burr*, *Loeffler*, *Meyer*, and particularly *Thacker* have undermined *Sevin* to the point of abrogating any binding effect that *Sevin* might have on TVA. Without conducting any analysis of whether the IWC was acting in a commercial or governmental role as required by *Burr*, the Fifth Circuit treated the IWC like a government entity rather than a private commercial enterprise and thus vested the IWC with privileges and immunities that a commercial business would not enjoy. *Sevin* would be reversed and remanded for further proceedings if released today. And citing *Sevin* to hold that the TVA is cloaked in the protections afforded government entities under the SAA would steer this case into a head-on collision with Supreme Court dictates. Here are two obvious ones.

1. *Discretionary function exception*: In *Thacker*, the Supreme Court unanimously reversed the Circuit Court for grafting the FTCA's discretionary function exception on to the TVA's sue-and-be-sued clause. Guess what exception our Circuit applies to claims brought under the SAA? That's right, the Eleventh Circuit is among "the majority [of circuits] holding that the SAA's waiver of immunity is subject to the discretionary function exception."

*Mid-S. Holding Co. v. United States*, 225 F.3d 1201, 1204 (11th Cir. 2000); *see also* 2 Schoenbaum, Admiralty & Maritime Law, § 20:1, n.75 (collecting cases). The court is confident that if it holds this case falls under the SAA, TVA will ask the court to apply the discretionary function exception—despite the Supreme Court reversing the lower courts for doing so in *Thacker*—because that's exactly what TVA asked this court to do on remand in *Thacker*. *See Thacker*, ALND Case No. 5:15-cv-1232 (doc. 109, p. 10).

2. *The Liability Floor*: The Supreme Court has made clear that "[w]hen we determined [in *Burr*] that the particular suit or incident of suit fell within the sue-and-be-sued waiver, we looked to the liability of a private enterprise as a *floor* below which the agency's liability could not fall." *Meyer*, 510 U.S. at 482. The Court cited this "floor" language in *Thacker* when stating that, when TVA acts like a commercial business, TVA cannot "escape the liability a private enterprise would face in similar circumstances." *Thacker*, 587 U.S. at 227. Binding circuit precedent dictates that a private enterprise would face supplemental state law punitive damages if it was in TVA's shoes. *See In re Amtrak*, *supra*. Holding that TVA is subject to the SAA, and that the SAA does not waive sovereign immunity from punitive damages, would allow TVA to slide under the liability floor faced by a private enterprise facing the same claim—in direct contradiction to the Supreme Court's statements in *Burr*, *Meyer*, and *Thacker*.

—

On top of these known problems, applying the SAA will surely generate questions the courts have yet to face. For example, who pays? TVA is self-sufficient, and the parties say TVA must pay any judgment or settlement it owes Plaintiffs. But the SAA requires that "[t]he proper accounting officer of the United States ***shall pay*** a final judgment, arbitration award, or settlement on presentation of an authenticated copy" and that payment "***shall*** be made from an appropriation or fund available specifically for the purpose." 46 U.S.C. § 30913(a), -(b) (emphasis added). If no such fund exists, then the Treasury must pay out of unappropriated funds. 46 U.S.C. § 30913(b). Read plainly, the SAA requires the taxpayers—not TVA—pay for TVA's negligent maritime-related acts. That's a substantial financial benefit that private power companies would not receive under the same

circumstance. It also flies in the face of Congress' intent for TVA's sue-and-be-sued clause: "When the TVA or similar body operates in the marketplace as private companies do, it is as liable as they are for choices *and judgments*." *Thacker*, 587 U.S. at 227-28 (emphasis added).

Rather than run head-on into these and other issues, the court holds that Plaintiffs "may proceed as they would against a private company" because, as pleaded, TVA was acting like a private company. *Thacker*, 587 U.S. at 227. That means none of the privileges or waiver exceptions given to governmental entities by the SAA applies to TVA here, and the court refuses to graft any of them onto TVA' sue-and-be-sued waiver.

## IV.

### MOTION TO DISMISS & MOTION TO STRIKE

With that, the court turns to TVA's requests: (1) dismiss Count 1, which pleads a negligence claim under Alabama law, (2) dismiss Count 2, which pleads a wantonness claim under Alabama law; and, (3) dismiss or strike Plaintiffs' request for supplemental state-law punitive damages under Alabama's wrongful death statutes, Ala. Code §§ 6-5-390, 6-5-410.

Each request stems from the rule that general maritime law preempts state law that materially alters or conflicts with the uniformity created by maritime law, but allows state law that supplements or fills gaps in maritime law. *See* Schoenbaum, *Admiralty and Maritime Law*, §§ 4:4, 4:5. Below, the court applies this rule to Counts 1-2 and the wrongful death Plaintiffs' prayer for supplemental state-law punitive damages. To make it easier, the court separates TVA's requests by Plaintiff type: Part A for those who survived the Dock B fire and seek remedies for personal injury and property damage, and Part B for the representatives of those who did not survive the fire.

**A.    The court dismisses Counts 1 and 2 for the surviving Plaintiffs.**

In Count 1, Plaintiffs plead that TVA's negligence under state law caused the surviving Plaintiffs' physical injury and property damage. 6AC, ¶ 72-73. In Count 2, they plead that TVA's wantonness under state law caused the same damages. *Id.* ¶ 83, 89. In Counts 4 and 5, Plaintiffs plead that the same negligent and wanton acts caused the same damage, only this time they

plead it under general maritime law and they invoke Rule 9(h) of the Federal Rules of Civil Procedure. And in their prayer for relief, the surviving Plaintiffs list eight categories of damages, without pleading whether the remedy is provided by maritime law, state law, or both. 6AC, ¶ 129. Nor do the surviving Plaintiffs plead that any of their requested remedies supplement the remedies provided by maritime law.

As pleaded, the surviving Plaintiffs seek the same remedies under the same legal theories in Counts 1-2 as they do in Counts 4-5; the court simply needs to choose which law governs, general maritime or state. As explained in Section II, the court sits in admiralty so general maritime law governs where it exists. While the court agrees with Plaintiffs that state law *can* provide supplemental remedies, *see, e.g.*, *Yamaha Motors Corp.*, 516 U.S. at 207, 214-16, the surviving Plaintiffs do not identify in their complaint what supplemental remedies they seek, or what gap in maritime law their state law claims fill. Nor do they provide this information in their response to TVA's present or previous motion. *See* (Docs. 127, 221).

The court thus dismisses Counts 1 and 2 for the surviving Plaintiffs. But the court does so without prejudice in case the surviving Plaintiffs can point to a supplemental state law remedy that they pleaded in the operative complaint; they can establish that no federal maritime rule governs; or, they can show that state interests predominate. *See Great Lakes Ins. SE v. Raiders Retreat Realty Co., LLC,* 601 U.S. 65, 70-71 (2024); Schoenbaum, *Admiralty & Maritime Law* §§ 4:4; 4:5

## B. The court dismisses Counts 1 and 2 for the wrongful death Plaintiffs but allows them to seek supplemental state law punitive damages.

The same background applies to the wrongful death Plaintiffs, except the wrongful death Plaintiffs expressly plead that state-law punitive damages supplement general maritime remedies: "Alabama state law wrongful death supplemental remedies under Ala. Code § 6-5-410 and/or Ala. Code § 6-5-390 for punitive damages allowed under *Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199 (1996)." 6AC, ¶128(a)(9).

As explained, Eleventh Circuit precedent allows the wrongful death Plaintiffs to seek supplemental punitive damages under Alabama's wrongful death statute, as long as the court applies the general maritime law's standard for wanton conduct and apportionment of liability:

> Accordingly, as the federal maritime interests present in this action outweigh Alabama's interests in having its wrongful death statute apply in its entirety, we hold that the district court erred in applying the Alabama wrongful death statute to the wrongful death claims in this action insofar as such Alabama statute provides for the recovery of punitive damages for simple negligence only and prohibits apportionment of fault and damages among joint tortfeasors.
>
> In the case of *American Dredging Co. v. Lambert*, 81 F.3d 127, 130 (11th Cir. 1996), this Court held that *Yamaha, supra,* extended the right of recovery in wrongful death cases to the nonpecuniary remedies afforded by the Florida Wrongful Death Act to actions for wrongful death to non-seamen occurring in state territorial waters. The plaintiffs in the wrongful death actions have available to them the remedies provided in *Moragne v. States Marine Lines*, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970). In addition, although such plaintiffs cannot recover punitive damages for simple negligence, they may recover punitive damages upon a showing of 'intentional or wanton and reckless conduct" on the part of defendants amounting to "a conscious disregard of the rights of others.' *CEH, Inc. v. F/V Seafarer*, 70 F.3d 694, 699 (1st Cir. 1995). This is because the standard of liability necessary for the recovery of punitive damages is governed by admiralty law. Alabama law provides only the remedy which under *Yamaha* is now available to these wrongful death claimants in admiralty.

*In re Amtrak*, 121 F.3d at 1427 (highlights added). As shown in the yellow highlight ("in its entirety"), some application of Alabama's wrongful death statute *is* allowed, so the court cannot dismiss the wrongful death Plaintiffs' state-law claims in their entirety. As shown in the blue highlighting, the role

of Alabama's wrongful death statute is limited to providing the supplemental remedy, not the legal standard.

Following the Circuit's wording as best it can, this court will allow the wrongful death Plaintiffs to proceed with Count 2 (state-law wantonness), only to the extent that Alabama law provides a supplemental remedy for TVA's wanton conduct. When determining whether Plaintiffs are entitled to supplemental relief under Count 2, the court will apply the general maritime standard for punitive damages: Plaintiffs must prove that TVA engaged in "intentional or wanton and reckless conduct" that amounted "to a conscious disregard of the rights of others." *Id.* The court will dismiss the rest of Counts 1 and 2, without prejudice for the same reasons and with the same conditions mentioned for the surviving Plaintiffs' claims under Counts 1 and 2.

## V.

## CONCLUSION

For these reasons, the court **GRANTS** TVA's motion to dismiss Counts 1 and 2 for the surviving Plaintiffs. The court dismisses these counts without prejudice. The court **GRANTS** TVA's motion to dismiss Count 1 for the wrongful death Plaintiffs. This dismissal is without prejudice. The court **DENIES** TVA's motion to dismiss Count 2 for the wrongful death Plaintiffs to the extent that Count 2 allows them to seek punitive damages, and the court **DENIES** TVA's motion to dismiss or strike the wrongful death Plaintiffs' prayer for supplemental state law punitive damages.

**Done** on January 6, 2025.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE