## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| **GERALD PAULK, et al.,**<br>    Plaintiffs,<br><br>**v.**<br><br>**TENNESSEE VALLEY AUTH.,**<br>    Defendant. | **Case No. 5:22-cv-15-CLM** |
| **JOSEPH MILES,**<br>    Plaintiff,<br><br>**v.**<br><br>**TENNESSEE VALLEY AUTH.,**<br>    Defendant. | **Case No. 5:22-cv-105-CLM** |
| **TOMMY JONES, et al.,**<br>    Plaintiffs,<br><br>**v.**<br><br>**TENNESSEE VALLEY AUTH.,**<br>    Defendant. | **Case No. 5:22-cv-114-CLM** |

## AMENDED ORDER & SUPPLEMENTAL MEMORANDUM OPINION

The court **DENIES** TVA's motion to reconsider its opinion that TVA cannot (at this stage) invoke sovereign immunity against the wrongful death plaintiffs' supplement state-law punitive damage claims. (Doc. 275).

The court adopts its previous opinion (doc. 274) and adds to it the four sections below that address certain arguments that TVA raised in its briefs supporting the motion to reconsider. In other words, if TVA appeals the court's decision under 28 U.S.C. § 1292(a)(3), this court's previous opinion (doc. 274) **plus** this supplemental opinion constitute the court's "interlocutory decree" that determined that TVA cannot invoke sovereign immunity at the Rule 12 stage because the plaintiffs sufficiently pleaded that TVA was engaged in commercial activity when TVA caused the decedents' deaths.

1

## DISCUSSION

As it did before, TVA argues that cases that pre-date *Thacker v. TVA*, 587 U.S. 218, 229 (2019) require this court to declare that (a) if a claim can be pleaded against TVA in admiralty, then it *must* be pleaded under the Suits in Admiralty Act ("SAA"), and (b) the SAA precludes punitive damages.

But this case exists in a post-*Thacker* world. And *Thacker's* holding was simple and unanimous:

> [I]f the conduct is commercial—the kind of thing any power company might do—the TVA cannot invoke sovereign immunity. In that event, the TVA's sue-and-be-sued clause renders it liable to the same extent as a private party.

*Id.* at 229. Once this court found that the wrongful death plaintiffs pleaded facts that would show TVA was acting like a commercial power company when the decedents perished, the TVA Act's sue-and-be-sued clause waived TVA's sovereign immunity because TVA wasn't acting as 'the Sovereign'. *Id.* As *Thacker* put it, "the TVA cannot invoke sovereign immunity."

That's why the SAA has no purpose here. Once the court determined that the wrongful death plaintiffs are suing TVA as a commercial enterprise, not as 'the Sovereign', the SAA's limited waiver of sovereign immunity for federally controlled corporations became pointless. The plaintiffs don't need the SAA to remove TVA's sovereign immunity a **second** time because, as the Supreme Court put it in *Thacker*, "TVA cannot invoke sovereign immunity." *Id.* One complete waiver of immunity is enough.

As you can see, a finding that TVA acted like a commercial power company rather than the federal Government is the lynchpin of *Thacker's* waiver analysis that this court followed to find that the TVA Act waives TVA's sovereign immunity here. So the court starts with TVA's attack on the court's finding that the plaintiffs sufficiently pleaded commercial conduct.

# I.

## SUFFICIENT PLEADING OF COMMERCIAL CONDUCT

TVA filed a Rule 12 motion that challenged the court's jurisdiction on immunity grounds. "Sovereign immunity is jurisdictional in nature," so the court had to rule on the issue. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Yet TVA complains that the court found that the plaintiffs pleaded facts that could show that TVA was engaged in a "commercial activity," thus precluding TVA's claim of sovereign immunity. *See Thacker* 587 U.S. at 229. TVA asks the court to rescind its decision and wait until after the parties present more briefing and evidence at trial to decide whether the wrongful death plaintiffs can defeat TVA's invocation of sovereign immunity. (Doc. 275, p. 4-5).

The court will not revoke or modify its previous opinion for two reasons. First, the court did not make any factual findings; it *assumed* the plaintiffs' pleaded facts were true as it does any time it decides a Rule 12(b) motion. *See* (Doc. 274, p. 5) ("The court thus frames its recitation of the facts, then its legal discussion, around these [*Thacker* and *Burr*] issues. Because TVA filed its motion under Rule 12, the court recites the facts as Plaintiffs pleaded them and views those facts in a light most favorable to Plaintiffs."); (*id*., p. 17) ("If proved true, Plaintiffs' pleaded facts would show that TVA's acts were commercial in nature. *Thacker* thus requires the court to allow Plaintiffs 'to proceed as they would against a private company.'").

Second, as mentioned in the introduction, the Supreme Court *ordered* this court to decide whether Gary Thacker sufficiently alleged commercial activity at the Rule 12 stage in *Thacker*. Like this case, TVA filed a Rule 12 motion to dismiss Thacker's claim, which the district court granted and the Circuit Court affirmed. *Thacker*, 587 U.S. at 222-23. The Supreme Court reversed, finding that both lower courts failed to conduct a proper analysis of TVA's sue-and-be-sued clause and remanded the case with this instruction:

> So to determine if the TVA has immunity here, <mark>the court on remand must first decide whether the conduct alleged to be negligent is governmental or commercial in nature</mark>. For the reasons given above, if the conduct is commercial—the kind of

> thing any power company might do—the TVA cannot invoke sovereign immunity. In that event, the TVA's sue-and-be-sued clause renders it liable to the same extent as a private party. Only if the conduct at issue is governmental might the court decide that an implied limit on the clause bars the suit. But even assuming governmental activity, the court must find that prohibiting the "type[ ] of suit [at issue] is necessary to avoid grave interference" with that function's performance. *Burr*, 309 U.S. at 245, 60 S.Ct. 488. Unless it is, Congress's express statement that the TVA may 'be sued' continues to demand that this suit go forward.

*Id.* at 229 (highlight added). The Supreme Court did not tell this court to wait until facts were presented at trial to decide whether TVA acted commercially; it said this court "must first decide whether the conduct **alleged** to be negligent is governmental or commercial in nature," *id.* (emphasis added), which makes sense because sovereign immunity is jurisdictional and must be decided before the court can proceed. *Meyer*, 510 U.S. at 475. This case is in the same posture as *Thacker*, so the court decided whether the "conduct alleged" to be wanton was commercial conduct. Because the court followed the Supreme Court's instructions, the court finds no error to correct.

Of course, facts pleaded in a complaint are just allegations. If the facts presented after discovery or during trial prove that TVA acted like the government, rather than like "any power company," *id.*, then the court might find sovereign immunity. *Id.* ("But even assuming governmental activity, the court must find that prohibiting the 'type[ ] of suit [at issue] is necessary to avoid grave interference' with that function's performance."). But for now, the court stands by its finding that the wrongful death plaintiffs pleaded facts that, if proved true, could show TVA was acting like a commercial power company. So the court cannot grant TVA's immunity-based Rule 12 motion because TVA cannot invoke sovereign immunity. *Id.* ("if the conduct is commercial—the kind of thing any power company might do—the TVA cannot invoke sovereign immunity").

## II

## THE SAA IS NOT AN "EXCLUSIVE" WAIVER.

To open its brief in support, TVA makes the same argument the court rejected in its original opinion: "The SAA's waiver of immunity is the exclusive waiver where claims cognizable under admiralty jurisdiction are asserted against a federally-owned corporation with capacity to sue and be sued." (Doc. 276, p. 8). And TVA relies on the same pre-*Thacker* cases from 1930 to 1943 that the court considered in its opinion. *See id.* (citing *Johnson v. U.S. Shipping Bd. Emerg. Fleet Corp.*, 280 U.S. 320, 327 (1930); *Brady v. Roosevelt S.S. Co.*, 317 U.S. 575, 579 (1943); *Sevin v. Inland Waterways Corp.*, 88 F.2d 988, 990 (5th Cir. 1937)).

As explained in the court's opinion, these cases do not support TVA's argument that the SAA provides the "exclusive" waiver of TVA's sovereign immunity for claims arising out of maritime events for three reasons:

1. The SAA's text *permits* admiralty claims to be filed despite sovereign immunity; the text does not create a cause of action or say that the SAA is the exclusive immunity waiver;

2. The Eleventh Circuit has held that more recent, more specific statutes like the Oil Pollution Act trump the SAA in certain maritime cases. *See Savage Serv. Corp. v. United States*, 25 F.4th 925, 933 (11th Cir. 2022); and,

3. TVA's cited cases pre-date *Thacker*; none of them consider the effect of the TVA Act's subsequently-enacted 'sue-and-be-sued' clause on the SAA, nor do they consider a factfinding that TVA acted like a commercial business, not as the Sovereign.

TVA makes no argument that convinces the court that it erred on any of these points. So the court affirms its original analysis in full.

The court adds another point here. TVA argues that the court overemphasizes *Thacker*—rather than TVA's cited caselaw from the 1930s and 1940s—because *Thacker* is not "an admiralty case" and the older cases are. (Doc. 276, p.9). TVA is correct that Gary Thacker did not file his case in admiralty, but the point hurts the 'exclusivity' argument more than it helps.

1. *Little help*: For starters, TVA doesn't explain why, after *Thacker*, the wrongful death plaintiffs' decision to designate their claims under Rule 9(h) changes the court's sovereign immunity analysis. *Thacker* says that if TVA acted like a private business, then TVA can be sued like a private business. "The TVA cannot invoke sovereign immunity." *Thacker*, 587 U.S. at 229.

As explained in the court's original opinion, Eleventh Circuit precedent says that wrongful death plaintiffs who sue in admiralty can use Alabama's wrongful death statute to seek punitive damages as a supplemental remedy. *See In re Amtrak "Sunset Limited" Train Crash in Bayou Canot, Alabama, on September 22, 1993*, 121 F.3d 1421, 1427-28 (11th Cir. 1997). In other words, these plaintiffs could cite *In re Amtrak* to sue a private business for punitive damages in admiralty. So if the plaintiffs can prove TVA acted like a private business, *Thacker* says that the plaintiffs can sue TVA for the same relief:

> *Burr* took as its premise that an agency launched with such a clause into the commercial world and authorized to engage in business transactions with the public should have the same amenability to judicial process as a private enterprise under like circumstances. ==*Meyer* also made clear that such an agency 'could not escape the liability a private enterprise would face in similar circumstances.'== 510 U.S., at 482, 114 S.Ct. 996; *see ibid.* ("==The liability of a private enterprise is a floor below which the agency's liability may not fall=="). And twice the Court held that the liability of the Postal Service (another sue-and-be-sued agency) should be similar to that of other self-sustaining commercial ventures. The point of those decisions, contra the Government, is that (barring special constitutional or statutory issues not present here) ==suits based on a public corporation's commercial activity may proceed as they would against a private company==; only suits challenging the entity's governmental activity may run into an implied limit on its sue-and-be-sued clause.

*Thacker*, 587 U.S. at 227 (cleaned up) (highlighting added). To hold that the SAA bars relief against TVA that could be sought against a power company who acted the same way as TVA flouts *Thacker* and Congress' directive when it enacted the TVA Act's sue-and-be-sued clause (after enacting the SAA).

2. *More harm*: As explained, the SAA doesn't change *Thacker's* immunity analysis because the plaintiffs do not need the SAA to waive TVA's sovereign immunity when TVA acts like a private business. The TVA Act's sue-and-be-sued clause *completely* waives TVA's immunity.

TVA tries to side-step this point by arguing that plaintiffs are *required* to file "claims cognizable under admiralty jurisdiction" under the SAA because the SAA's immunity waiver is "exclusive." (Doc. 276, p.8). But *Thacker* undercuts TVA's 'exclusivity' theory. Gary Thacker could have pleaded his claims in admiralty and his immunity waiver under the SAA, but he chose instead to invoke § 1331 federal question jurisdiction and invoke the TVA Act's sue-and-be-sued waiver. Thacker's choice to plead the TVA Act prevailed before the Supreme Court—over TVA's argument that the SAA was Thacker's exclusive remedy.

The Solicitor General represented TVA before the Supreme Court. He pointed out at the cert stage and during merits briefing that Thacker could have invoked the court's admiralty jurisdiction because Thacker was injured during a collision between a vessel and infrastructure on a navigable river. *See Thacker*, Supreme Court Case No. 17-1201 (Brief in Opposition, pp. 16-18); (Respondent's Brief, p. 31, n.6). And the Solicitor General made the same 'SAA is exclusive' argument that TVA makes here:

> Thus, although petitioners attempted to plead in their complaint that they are permitted a remedy by the TVA's sue-and-be-sued provision, because the SIAA applies, petitioners were required to proceed under that statute—including the limitations on the SIAA's remedy—or not to proceed at all.

*Id.* (Brief in Opposition, p. 18) (highlight added). Because the SAA is exclusive when a claim can be pleaded in admiralty, TVA said, the Supreme Court needn't grant certiorari review to decide whether the TVA Act's sue-and-be-sued clause permitted use of the discretionary function exception. *Id.*

In response, Thacker did not deny that he could have invoked the court's admiralty jurisdiction and sought the SAA's immunity waiver rather than seek his waiver from the TVA Act's sue-and-be-sued clause. Instead, Thacker

7

argued that either (a) the SAA did not apply to TVA or (b) the TVA Act's sue-and-be-sued clause "repealed" any conflicting waiver provided by the earlier-enacted SAA. *Id.* (Cert. Reply Brief, pp. 9-13).

The Supreme Court granted Thacker's petition and ruled in his favor on the merits without declaring whether (a) the SAA did not apply to TVA or (b) the TVA Act's sue-and-be-sued clause trumped the SAA. As a result, this court cannot say how the Supreme Court resolved TVA's cert and merits stage "exclusivity" argument. What the court can say, however, is that the Supreme Court analyzed sovereign immunity under Thacker's choice of the TVA Act's sue-and-be-sued clause—despite TVA's argument that the SAA was exclusive because Thacker could have pleaded his claim in admiralty.

Citing *Thacker*, the wrongful death plaintiffs here chose to invoke the TVA Act's sue-and-be-sued clause, rather than the SAA's immunity waiver, because TVA was acting like a commercial business when it injured them:

> 29. Under the circumstances of this case, the TVA can be sued in its own name. *Thacker v. Tennessee Valley Authority*, 139 S.Ct. 1435, 1440 (2019). In fact, when the conduct is commercial in nature – the kind of thing any power company or landowner might do – the TVA cannot invoke sovereign immunity. The TVA is liable to the same extent as a private party. *Id.* at 1444. Here, the TVA acted as a landowner and/or landlord and/or lessor and was involved in commercial activity such as any landowner and/or landlord and/or lessor would engage, including inspecting Dock B for deficiencies which endangered people such as Plaintiffs.

(Doc. 184, p. 8) (operative complaint). Because the Supreme Court respected Thacker's choice to seek waiver under the TVA Act's sue-and-be-sued clause, despite TVA's argument that the SAA's waiver was exclusive, the court finds that it did not clearly err in doing the same here.

## III.

## CIRCUIT PRECEDENT ON PUNITIVE DAMAGES

TVA cites for the first time a trio of cases that it says constitutes binding circuit precedent that TVA is immune from being sued for punitive damages.[1] *See Heathcoat v. Potts*, 905 F.2d 367, 372 (11th Cir. 1990); *Springer v. Bryant*, 897 F.2d 1085, 1089 (11th Cir. 1990); *Painter v. TVA*, 476 F.2d 943, 944 (5th Cir. 1973). The last of these cases cites the first two for the matter-of-fact proposition that "TVA is absolutely immune from being sued in an Alabama wrongful death action." *Heathcoat*, 905 F.2d at 372.

As explained below, these newly cited cases do not render the court's original decision clearly erroneous because (a) all three pre-date *Thacker* and (b) none of them deal with the legally salient fact here—*i.e.*, TVA (allegedly) acted as a commercial business when TVA injured them. But the court starts by explaining how these cases got off track from the start.

1. *TVA's cases*: The three-case string starts with the Fifth Circuit panel decision in *Painter*. The *Painter* plaintiffs sued TVA under Alabama's wrongful death statute, but the opinion does not state what TVA did to cause the decedents' deaths. 476 F.2d at 944. As described by the Circuit Court, the district court dismissed the case "under the established rule that punitive damages cannot be recovered from the United States or its agencies. *See Missouri Pacific R. R. v. Ault*, 256 U.S. 554, 41 S.Ct. 593, 65 L.Ed. 1087 (1921); *Reconstruction Finance Corp. v. Texas*, 229 F.2d 9 (5th Cir.), cert. denied, 351 U.S. 907, 76 S.Ct. 695, 100 L.Ed. 1442 (1956). *See also Fowler v. Tennessee Valley Authority*, 208 F.Supp. 828 (E.D.Tenn. 1962), *aff'd on other grounds*, 321 F.2d 566 (6th Cir. 1963)." *Id.* at 944. While the Circuit recited the district court's reasoning, it did not analyze the cited cases or the TVA Act. *Id.* at 944-45. Rather, the Circuit merely opined that it was "altogether anomalous" that Alabama plaintiffs could not sue TVA for wrongful death while similarly situated plaintiffs in other states could—then affirmed. *Id.*

---

[1] In its initial briefing, TVA did not cite *Painter* or *Heathcoat*, and it cited *Springer* only for the uncontested proposition that "TVA is a federally-owned corporation that acts as an agency or instrumentality of the United States." (Doc. 195, p. 19). TVA never mentioned these cases as establishing a blanket rule that it cannot be sued for punitive damages under Alabama law.

The later Eleventh Circuit cases, *Springer* (1990) and *Heathcott* (1990), were FELRTCA[2] lawsuits in which the Circuit Court cited *Painter* as matter-of-factly establishing that TVA is immune from being sued under Alabama's wrongful death statute. *See Springer*, 897 F.2d at 1089; *Heathcott*, 905 F.2d at 372. Neither case analyzed the TVA Act, and neither decided whether TVA was acting like a commercial business when the decedent was killed.

2. *The predecessor cases*: In short, all three circuit opinions base their statement that TVA is immune from punitive damages under Alabama's Wrongful Death statute on a district court statement that cited (a) the Supreme Court's 1921 decision in *Missouri Pacific R.R. v. Ault* ("*Ault*") and (b) the Fifth Circuit's 1956 opinion in *Reconstruction Finance Corp. v. Texas* ("*RFC*"). *See Painter,* 476 F.2d at 944. But neither *Ault* nor *RFC* dealt with TVA, the TVA Act, or a sue-and-be-sued clause. Rather, they dealt with unique immunity waivers—one dealing with government-controlled railroads and the other with ad valorem taxes. The court starts with the former.

a. *Ault (SCOTUS)*: Plaintiff Ault worked for the Missouri Pacific Railroad until he was terminated in July 1918. Ault sued the railroad for wages plus a penalty allowed by Arkansas law. The Supreme Court took the case to decide whether Ault could seek the state-law penalty.

In 1917, Congress gave the President control over the Missouri Pacific Railroad. The President, through his Director General, operated this and other private railroad companies under the Federal Control Act of 1918. *See Ault*, 256 U.S. at 556. To ensure that persons injured by these rail companies could still be compensated while the federal Government controlled them, Congress passed Section 10 of the Federal Control Act:

> That carriers while under federal control shall be subject to all laws and liabilities as common carriers, whether arising under state or federal laws or at common law, except in so far as may be inconsistent with the provisions of this act or any other act applicable to such federal control or with any order of the

---

[2] FELRTCA (Pub. L. No. 100-694) amended the TVA Act to provide that TVA can step in as the party defendant if a TVA employee is sued for an act done while working for TVA, and that action precludes all other lawsuits arising from the same act. *See* 16 U.S.C. § 831c-2.

> ==President==. Actions at law or suits in equity may be brought by and against such carriers and judgments rendered as now provided by law; and in any action at law or suit in equity against the carrier no defense shall be made thereto upon the ground that the carrier is an instrumentality or agency of the federal government. * * * But no process, mesne or final, shall be levied against any property under such federal control.

*Id.* at 558 (highlight added). This court highlights "while under federal control" because, as the Supreme Court noted, the statute acted differently depending on whether the private company or the federal Government was in control when the plaintiff was injured. If the plaintiff was injured "prior to government control," then the plaintiff could sue the private company under all applicable laws. *Id.* at 561. That meant Plaintiff Ault could seek his wages plus the penalty if the railroad was acting under private control.

The answer was different when the federal Government controlled. The President, through a General Order of his Director General, declared that the Director General could be sued when he was operating the railroad for the federal Government, "Provided, however, that this order shall not apply to actions, suits, or proceedings for the recovery of fines, penalties, and forfeitures." *Id.* at 564. And the Federal Control Act said that Plaintiffs could sue the railroad like a private business "while under federal control . . . except in so far as may be inconsistent with the provisions of this act or any other act applicable to such federal control or with any order of the President." *Id.* at 558. The Supreme Court thus found that if a plaintiff was injured while the federal Government controlled the railroad, the plaintiff was limited to compensatory liability—not "double damages, penalties and forfeitures, which do not merely compensate but punish." *Id.* at 564. Because Ault was terminated while the federal Government controlled the railroad, the Court decided that the Director General—who was acting as the federal Government—was immune from the state-law penalty.

b. *RFC (CA5)*: *RFC* dealt with Texas' ability to impose penalties on two federal corporations (Reconstruction Finance Corporation (RFC) and Federal Facilities Corporation (FFC)) for failing to timely pay ad valorem taxes. 229 F.2d at 9-10. RFC and FFC were "corporate agencies of the United States" that,

11

as the Supreme Court put it, were "selected by the Government to accomplish purely Governmental purposes." *Id.* at 10 (quoting *Cherry Cotton Mills, Inc. v. United States*, 66 S.Ct. 729, 730 (1946)). Article IV, Section 3 of the Constitution prohibits the States from taxing the federal Government's property, including federal agencies like RFC and FFC, unless Congress allows it. Congress had done so but in a limited fashion: "any real property of the Corporation shall be subject to special assessments for local improvements and shall be subject to State, Territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed." *RFC*, 229 F.2d at 11 (quoting former 15 U.S.C. § 607) (highlight added). The Fifth Circuit found that in using the word "taxed," Congress waived RFC and FFC's immunity from taxes, but not from additional penalties and interest. *Id.* at 12.

3. *Ratio decidendi*: The court details *Ault* and *RFC* to show that neither case had anything to do with TVA, the TVA Act, or sue-and-be-sued clauses. And both cases involved corporate entities fulfilling Governmental purposes, not acting as private businesses. Yet somehow *Ault* and *RFC* form the basis for the Circuit's declaration that Congress allowed TVA to be sued like a private business—just not for punitive damages, an exception found nowhere in the TVA Act's text. The Circuit's reliance on *RFC* and *Ault* is particularly odd considering the Supreme Court had interpreted more relevant sue-and-be-sued clauses in cases like *Burr* (1940).

Regardless, *Thacker* is a Supreme Court decision that post-dates all of these Circuit decisions, and *Thacker* requires district courts to decide whether TVA acted like a commercial business or governmental entity before deciding whether TVA has sovereign immunity under the sue-and-be-sued clause. None of the Circuit decisions that TVA cites conducted this necessary inquiry. The court thus finds that *Painter*, *Springer*, and *Heathcott* are not binding because none of those cases forced the Circuit Court to confront the argument and legally salient facts presented here—*i.e.*, that TVA was acting like a commercial enterprise, not as the Sovereign, so TVA cannot invoke sovereign immunity under *Thacker*. *See Ramos v. Louisiana*, 590 U.S. 83, 104 (2020) ("It is usually a judicial decision's reasoning—its ratio decidendi—that allows it to have life and effect in the disposition of future cases."); Lawrence B. Solum, Originalist Theory and Precedent: A Public Meaning Approach, 33 Const.

Comment. 451, 459 (2018) (describing a decision's holding under ratio decidendi as "the rule that is logically entailed by the reasoning that was necessary to reach the outcome on the basis of the legally salient facts and the arguments of the parties").

## IV.

## INTRADISTRICT CONFLICT

Finally, TVA argues that this court's opinion conflicts with Judge Burke's recent decision in *Jones, et. al. v. United States, et. al*, ALND Case No. 5:22-cv-620 ("*Jones*"), a case pending appeal in the Eleventh Circuit. *See id,* CA11 Case No. 25-11407 ("*Jones* appeal"). But there is no conflict because the cases involve different facts and different pleading choices.

1. *Jones*: Schrade Jones and Carter Gilliam were bowfishing at night on Lake Guntersville when they ran their boat into an unmarked duck blind, knocking both men unconscious. The two men sued the United States and TVA, pleading admiralty jurisdiction and immunity waiver under the SAA and TVA Act. *See Jones* (doc. 1, ¶ 5-7). They did not allege that TVA was acting like a commercial business when it failed to remove the duck blind. Rather, they alleged that (a) federal law gave the Coast Guard and TVA joint responsibility for ensuring that the lake was free from obstruction and (b) both entities were negligent and wanton for failing to remove the duck blind. In other words, Jones and Gilliam alleged that TVA breached a governmental duty—just as the Coast Guard breached the same governmental duty.

The United States and TVA moved to dismiss, citing Eleventh Circuit caselaw that imposes the FTCA's discretionary function exception on claims filed under the SAA—the same discretionary function exception the Supreme Court rejected in *Thacker* when the Eleventh Circuit imposed it on the TVA Act's sue-and-be-sued clause. *See Cranford v. United States*, 466 F.3d 955, 958 (11th Cir. 2006). Judge Burke held oral argument on the motion, during which Jones and Gilliam argued either that (a) *Thacker* made the discretionary function exception inapplicable to the SAA or (b) the Eleventh Circuit exceeded its authority in *Cranford* when it imposed the discretionary function exception on the SAA's immunity waiver even though Congress did not put the exception

13

in the statute's text. Judge Burke found that (a) the Supreme Court did not consider the SAA's waiver in *Thacker*, so *Thacker* did not control, and (b) as a district judge, he did not have the authority to overrule *Cranford*. (Doc. 35, p. 10). So Judge Burke applied the discretionary function exception and dismissed the original complaint *without* prejudice. The court emphasizes "without" because Judge Burke allowed Jones and Gilliam to amend their complaint in a way that "might" avoid the exception:

> One final thing. The Court believes that the core facts of this suit might give rise to a cognizable claim if Plaintiffs make certain amendments to their complaint. Such amendments, for example, *could* include proceeding under a different jurisdictional statute; alleging non-maritime claims; or dropping or adding parties. The Court therefore grants Plaintiffs leave to amend their complaint. Should Plaintiffs fail to file an amended complaint by April 14, 2023, the Court will enter a final judgment in accordance with this opinion and direct the Clerk of Court to close this case.

(Doc. 35). The suggestion seems obvious: the court might find waiver of sovereign immunity if Jones and Gilliam either (a) pleaded federal question jurisdiction as Gary Thacker did or (b) dropped the United States as a party so the plaintiffs could rely on TVA's sue-and-be-sued clause—which does not apply to the United States—and thus avoid circuit precedent that imposes the discretionary function exception on claims brought under the SAA.

But the plaintiffs chose neither path; they instead chose to again plead maritime claims under the SAA and keep the United States as a party (doc. 36), so that they could ask the district court to overrule or ignore *Cranford* in light of *Thacker* (doc. 47, pp. 14-42). Judge Burke again said that he could not ignore the circuit's opinion in *Cranford*, so he dismissed the complaint. (Doc. 51). As TVA's recent notice to this court shows, Jones and Gilliam seek initial hearing en banc to overturn circuit panel precedent in light of *Thacker*. (Doc. 281-1, 281-2, 281-3, 281-4).

In short, Jones and Gilliam—who are represented by the same attorney who prevailed in *Thacker*—chose to run head-first into the SAA so they could challenge the Circuit's application of the discretionary function exception on appeal. So rather than plead facts that would show TVA was acting like a commercial business, they pleaded facts and law that would show TVA and the Coast Guard were performing the same governmental duties. As a result, Judge Burke was not squarely presented with *Thacker*.

2. *This case*: Our plaintiffs chose differently. While they also pleaded admiralty jurisdiction and Rule 9(h), they omitted the United States as a party. Making TVA the sole defendant allowed our plaintiffs to plead that the TVA Act as interpreted in *Thacker* provided the immunity waiver. And they pleaded an allegation and supporting facts that could show that TVA was acting like a commercial business—unlike the *Jones* plaintiffs, who tied TVA to the federal government's duty to clear navigable waters of obstructions.

As a result, this court's opinion (doc. 274) and Judge Burke's opinion in *Jones* do not conflict. That said, if TVA wants to argue a district split to the Circuit Court, they can appeal this court's two-part interlocutory decree under 28 U.S.C. § 1292(a)(3). If TVA does appeal, perhaps the Circuit Court will ask these questions that TVA has yet to answer:

1. What text in the TVA Act says that TVA's sovereign immunity is waived in cases at law but not in admiralty cases?
2. What text in the SAA says that the SAA provides the exclusive vehicle for filing a maritime claim against TVA?
3. Did the Supreme Court err by not forcing Gary Thacker to proceed in admiralty under the "exclusive" SAA?
4. If a private power company had acted as the wrongful death plaintiffs allege TVA acted, could the wrongful death plaintiffs seek punitive damages from that power company?
5. If the Circuit Court finds that the plaintiffs had to file their claims under the SAA, will TVA ask the district court on remand to dismiss the wrongful death plaintiffs' complaint under the 'discretionary function' exception—*i.e.,* the same exception the Supreme Court held does not apply to TVA if TVA is alleged to have acted like a commercial business?

## CONCLUSION

For these reasons, the court did not err when it found that TVA cannot invoke sovereign immunity over the wrongful death plaintiffs' supplemental state-law claims for punitive damages—at least at the Rule 12 stage. The court thus **DENIES** TVA's motion to reconsider. (Doc. 274).

**Done** on April 10, 2025.

**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE